Sandra MARSHALL and husband,
Harold Kenneth Marshall

v.

EMPLOYERS HEALTH INSURANCE
COMPANY.

No. 3:95–0541.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 4, 1996.

Patricia Ann McDade, Franklin, TN, for plaintiffs.

Eugene N. Bulso, Jr., Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are cross-motions for summary judgment (Docket Nos. 18 and 21). This Court has jurisdiction pursu- ant to 28 U.S.C. § 1332 (Docket No. 11). For the reasons described herein, the Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED and the Plaintiffs' Motion for Summary Judgment (Docket No. 21) is DENIED.

This case raises novel ERISA issues regarding the preemption of Tennessee subrogation law and the "make whole doctrine" under the federal common law.

The Court holds: (1) Tennessee subrogation law, including the make whole doctrine, is preempted by ERISA; (2) under federal common law, in the absence of a clear contractual provision to the contrary, an insured must be made whole before an insurer can enforce its right of subrogation under ERISA. Since the subrogation provision in this case does not clearly provide to the contrary, the make whole doctrine applies to the Defendant's right of subrogation; and (3) the ERISA plan in this case contains a right of reimbursement that is independent of the right of subrogation and the make whole doctrine. Accordingly, under the right of reimbursement provision, Defendant is entitled to reimbursement of the medical expenses it paid on behalf of Plaintiffs.

### Facts

The following facts are undisputed:

Sandra J. Marshall, Plaintiff, was injured in an automobile collision on October 13, 1992. Mrs. Marshall sustained personal injuries in the collision for which she sought and received medical attention. The other driver involved in the collision, E. Leonard Sullivan, was killed.

The Defendant, Employers Health Insurance Company ("Employers Health"), has paid, pursuant to an employee benefit plan, medical expenses totaling $59,303.13 on behalf of Sandra J. Marshall for treatment of injuries which Mrs. Marshall received in the October 13, 1992 collision.

On June 11, 1993, Sandra J. Marshall filed an action in the Circuit Court of Williamson County, Tennessee, against Mildred Ann Sullivan, Executrix of the Estate of E. Leonard Sullivan, for personal injuries sustained in

the collision. On February 3, 1995, the Circuit Court for Williamson County entered judgment on the jury's verdict in favor of Sandra J. Marshall against the Estate of E. Leonard Sullivan in the amount of $300,-000.00.

To date, the Plaintiff has recovered $95,-000.00 plus interest from the Estate of E. Leonard Sullivan in partial satisfaction of the $300,000.00 judgment. The sums recovered by the Plaintiff have been deposited with the Clerk of this Court.

The employee benefit plan at issue in this case ("Plan") is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Plan at issue is insured, not self-funded, and is administered by the Defendant, Employers Health, a corporation organized under the laws of Wisconsin and licensed to do business in the State of Tennessee. The discretionary authority of the Plan administrator is as set out under ERISA, 29 U.S.C. § 1001, *et seq.*

Plaintiff Sandra J. Marshall has not been "made whole" by her recovery of the amounts now deposited with the Court.

Plaintiffs' counsel advised the Court that the Plaintiffs will be unable to recover the $205,000 balance on the state court judgment because the Estate of E. Leonard Sullivan has too few assets. This was not contested by Defendant.

Plaintiffs' counsel further advised the Court that the $95,000 paid into the Court is the full amount recovered without regard to the attorneys' fees and costs necessary to obtain the state court judgment. Defendant did not contest this fact.[1]

The Plan provides, in pertinent part, as follows:

### RIGHT OF SUBROGATION

If, after payments have been made under the Policy, You or Your covered Dependent has a right to recover damages from a responsible third party, We will be subrogated to Your rights to recover. You or Your covered Dependent will do whatever

is necessary to enable Us to exercise Our right and will do nothing after loss to prejudice it. If We are precluded from exercising Our Right of Subrogation, We may exercise Our Right of Reimbursement.

### RIGHT OF REIMBURSEMENT

If benefits are paid under the policy and You or Your covered Dependent recovers from a responsible third party by settlement, judgment, or otherwise, We have the right to recover from You or Your covered Dependent an amount equal to the amount we paid.

Defendant claims it has a subrogation interest in the $95,000.00 paid into the Court. Plaintiffs assert that Defendant is not now entitled to the $95,000.00 recovered on the $300,000.00 judgment because of the "make whole doctrine" of the federal common law.

### *Preemption*

The parties agree that ERISA applies to preempt Tennessee subrogation law, including the Tennessee make whole doctrine, but disagree about the effects of such preemption. The Court holds that ERISA preempts Tennessee subrogation law, including the Tennessee make whole doctrine, in this case.

ERISA contains three provisions regarding preemption. The Sixth Circuit summarized the way these provisions work in *Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445 (6th Cir.1993):

"The first provision states that Congress intended ERISA to preempt state laws which relate to employee benefit plans:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

29 U.S.C. § 1144(a) (1988). The general preemptive effect on subsection (a), however, is specifically limited by subsection (b) of the

---

1. The issue of whether the Defendant is obligated to pay for Plaintiffs' attorney's fees for collecting the subrogation claim is not part of the pending motions for summary judgment. *Tennessee*

*Farmers Mut. Ins. Co. v. Pritchett,* 54 Tenn.App. 410, 391 S.W.2d 671 (1964); *Boston, Bates & Holt v. Tennessee Farmers Mut. Ins. Co.,* 857 S.W.2d 32 (Tenn.1993).

Act, commonly referred to as the "saving clause":

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A) (1988). Finally, the power which subsection (b) reserves to the states to regulate insurance, banking and securities is likewise expressly limited by subparagraph (2)(B) of that subsection, commonly referred to as the "deemer clause":

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B) (1988)." *Electro-Mechanical Corp.,* 9 F.3d at 448–49 (emphasis omitted).

In *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), the Supreme Court described the scope and effect of these preemption provisions:

> The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies and insurance contracts.

*Id.*

The issue in *FMC Corp.* was whether ERISA preempted the application of Pennsylvania's antisubrogation statute to a self-funded ERISA plan. The Court initially found that ERISA's general preemption clause applied because the antisubrogation statute related to an employee benefit plan. *Id.* at 58–59, 111 S.Ct. at 407–08. The Court next found that the antisubrogation statute was saved from preemption by the savings clause because it was a law that regulated insurance. *Id.* at 60–61, 111 S.Ct. at 408–09. Finally, the Court held that the antisubrogation statute was preempted because the deemer clause exempted self-funded ERISA plans from state laws that regulate insurance. *Id.* at 61, 111 S.Ct. at 409.

The *FMC Corp.* Court drew a clear distinction between ERISA's preemptive effect upon self-funded and insured plans:

> As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause.... The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Id.* The Court then summarized the effect of this distinction:

> Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it. As a result, employers will not face " 'conflicting or inconsistent State and local regulation of employee benefit plans.' "

*Id.* at 64, 111 S.Ct. at 411 (citation omitted).

In this case, the three ERISA preemption provisions apply in the following way.

First, the general preemption clause, 29 U.S.C. § 1144(a), acts to preempt all Tennessee law relating to the Plan.

Second, the savings clause, 29 U.S.C. § 1144(b)(2)(A), then saves from preemption any Tennessee law that regulates insurance.

■ Third, the deemer clause, 29 U.S.C. § 1144(b)(2)(B), does not apply in this case because the Plan in question ·is insured, not self-funded.

■ Tennessee's common law of subrogation clearly "relate[s] to an employee benefit plan" within ERISA's general preemption clause. In *FMC Corp.*, the Supreme Court held that state subrogation law "relate[s] to" employee benefit plans and, therefore, is preempted by the general preemption clause, 29 U.S.C.· § 1144(a). 498 U.S. at 57–58, 111 S.Ct. at 407–08.

Thus, for purposes of preemption, the issue becomes whether Tennessee's subrogation common law, including the make whole doctrine, "regulates insurance" and is thereby saved from ERISA preemption by the savings clause. 29 U.S.C. § 1144(b)(2)(A).

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court provided guidance for determining whether state law regulates insurance. "A common sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. at 1554. The *Pilot Life* Court then opined, based on McCarran–Ferguson Act[2] factors, that a state law regulates insurance if: (1) the law transfers or spreads policyholder risk; (2) the law concerns an integral part of the policy relationship between insurer and insured; and (3) the law is limited to entities within the insurance industry. *Id.* See also *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Metropolitan·Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

The Tennessee common law of subrogation is not limited to the insurance industry. 23 Tenn.Juris., *Subrogation* § 3 (1985) provides:

Nature and Theory of Doctrine.—Subrogation is a right which is founded upon equity and justice and accrues when one person, for protection of his own interest, pays a debt for which another is primarily liable. Subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity; it rests on the principle that substantial justice should be attained regardless of form.... The right of subrogation cannot be enforced until the whole debt is paid....

15 Tenn.Juris., *Insurance* § 77 (1984) also provides:

The doctrine of subrogation in insurance does not arise from, nor is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity. The right of subrogation rests not upon a contract, but upon the principles of natural justice.... An insured must be made whole before an insurer is entitled to subrogation against a tort feasor.·...

See, e.g., *Third Nat'l Bank in Nashville v. Highlands Insur. Co.*, 603 S.W.2d 730 (Tenn. 1980); *Hickory Springs Mfg. Co. v. Evans*, 541 S.W.2d 97 (Tenn.1976); *Goodfriend v. United American Bank, et al.*, 637 S.W.2d 870 (Tenn.Ct.App.1982); *Ottenheimer Publishers, Inc. v. Regal Publishers, Inc., et al.*, 626 S.W.2d 276 (Tenn.Ct.App.1981); and *McGee v. County of Wilson, et al.*, 574 S.W.2d 744 (Tenn.Ct.App.1978).

■ The "make whole doctrine" under Tennessee law is "the well-established principle that the right of subrogation cannot be enforced until the whole debt is paid." *Wimberly v. American Cas. Co.*, 584 S.W.2d 200, 203 (Tenn.1979) "[T]he insured must be made whole before subrogation rights arise in favor of the insurers." *Id.* "As a subrogee, the insurer does not acquire the rights of its insured until the latter is made whole." *Id.* at 204.

---

**2.** 15 U.S.C. § 1011 *et seq.*

Tennessee subrogation common law, including the make whole doctrine, is law of general application. It does not "regulate" insurance. Accordingly, the savings clause does not apply to save Tennessee subrogation common law from preemption by ERISA. 29 U.S.C. § 1144(b)(2)(A). The Tennessee common law of subrogation, including the make whole doctrine, is preempted by ERISA in this case.

### Federal Common Law

Having found that Tennessee subrogation common law is preempted, the issue becomes whether a federal common law "make whole doctrine" applies to the ERISA Plan in this case.

There is a split of authority on if and when the federal common law "make whole doctrine" applies under ERISA.

Defendant asserts that since the Plan unambiguously permits it to exercise its right of subrogation, the make whole doctrine does not apply. Defendant, more specifically, argues that even those courts that have adopted the make whole doctrine as federal common law have done so only when the Plan itself is silent or ambiguous as to subrogation rights. *Shell v. Amalgamated Cotton Garment*, 871 F.Supp. 1173 (D.Minn.1994), *aff'd*, 43 F.3d 364 (8th Cir.1994); *Springs Valley Bank & Trust Co. v. Carpenter*, 885 F.Supp. 1131 (S.D.Ind.1993); *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir. 1993), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); *Barnes v. Independent Auto. Dealers Association of California*, 64 F.3d 1389 (9th Cir.1995); *Trustees of Hotel & Rest. Emp. Int. Un. Wel. Fund v. Kirby*, 890 F.Supp. 939 (D.Nev.1995).

Defendant also argues that even if it cannot prevail under the subrogation provision, it is still entitled to judgment pursuant to the reimbursement provision of the Plan. *McIntosh v. Pacific Holding Co.*, 992 F.2d 882 (8th Cir.1993), *cert denied*, 510 U.S. 965, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993).

Plaintiff argues that the make whole doctrine applies because the subrogation clause is ambiguous. It is ambiguous, according to the Plaintiff, because it is silent as to the priority of the disbursement of funds recovered from a responsible third-party tortfeasor. *Barnes v. Independent Auto. Dealers Assoc. of California Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir.1995); *Provident Life and Accident Ins. Co. v. Williams*, 858 F.Supp. 907 (W.D.Ark.1994); *Sanders v. Scheideler*, 816 F.Supp. 1338 (W.D.Wis.1993); *Blue Cross/Blue Shield v. Flam*, 509 N.W.2d 393 (Minn.App.1993); *Schultz v. Nepco Employees Mut. Benefit Assoc., Inc.*, 190 Wis.2d 742, 528 N.W.2d 441 (1994); *Trustees of Hotel Emp. & Rest. Emp. Int. Un. Wel. Fund v. Kirby*, 890 F.Supp. 939 (D.Nev.1995).

Plaintiff further argues that the reimbursement provision does not apply because the subrogation provision limits the applicability of the reimbursement provision to instances where the Defendant is precluded from subrogation. The make whole doctrine, according to the Plaintiff, does not preclude subrogation; it merely makes it contingent.

The Court has reviewed the authorities cited by the parties. The parties are in agreement that this case is apparently a case of first impression in the Sixth Circuit.

The Court finds that *Barnes v. Independent Automobile Dealers Assoc. of California Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir.1995) is well-reasoned authority and guides the decision of this Court on the subrogation issue in this case.

In *Barnes*, the Court established the following principles pertinent to this action. "Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." *Id.* at 1393 (citation omitted). "We must construe ambiguities in an ERISA plan against the drafter and in favor of the insured." *Id.* (citation omitted). When a "plan is silent" on a point and "ERISA does not include a specific provision to resolve such questions, this court 'ha[s] the authority, indeed the obligation, to adopt a federal rule— that is, a rule that best comports with the interests served by ERISA's regulatory scheme.'" *Id.* at 1394 (citation omitted). "Although this Court is 'free to adopt any

rule, the common law decision making process is inherently incremental in nature; the very genius of the common law is that it proceeds empirically and gradually, testing the ground at every step. Here, that approach calls for devising a rule that does not stray too far from the existing regime.' " *Id.*

"It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Id.* "The make-whole principle is a rule of interpretation. No one doubts that the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his make-whole right. The right exists only when the parties are silent. It is a 'gap filler.' " *Id.* (Citation omitted).

"That rule is supported by substantial authority in existing insurance law, and it is consistent with ERISA's purpose of protecting participants in employee benefit plans.... Because the make-whole rule does not permit an insured to recover from the tort-feasor and from her insurance company if the recovery would exceed the damages, it also is consistent with ERISA's related purpose of maintaining the interest of other employees in their benefit plans." *Id.* at 1394–95.

"We adopt as federal common law this generally accepted rule, that in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." *Id.* at 1395.

■ This Court, like *Barnes*, holds that in the absence of a clear contractual provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation under ERISA. In other words, unless the ERISA plan at issue unambiguously provides otherwise, the make whole doctrine applies to ERISA plans.

In *Barnes*, the Ninth Circuit held "we would not apply the interpretive 'make-whole rule' as a 'gap-filler' if the subrogation clause in the Plan document specifically allowed the plan the right of first reimbursement out of

any recovery Barnes [the insured] was able to obtain even if Barnes were not made whole. The clause, however, contains no such language." *Id.* at 1395.

■ In this case, like *Barnes*, the subrogation provision does not "specifically allow the plan the right of first reimbursement out of any recovery." *Id.* It provides:

*RIGHT OF SUBROGATION*

If, after payments have been made under the Policy, You or Your covered Dependent has a right to recover damages from a responsible third party, We will be subrogated to Your rights to recover. You or Your covered Dependent will do whatever is necessary to enable Us to exercise Our right and will do nothing after loss to prejudice it. If We are precluded from exercising Our Right of Subrogation, We may exercise Our Right of Reimbursement.

As discussed above, this language must be construed against Defendant.

The subrogation provision does not state that Defendant has the right of first reimbursement. It does not establish any priority for payment of funds recovered from a responsible third-party tortfeasor. Moreover, the subrogation provision does not expressly state that the make whole doctrine shall not apply. Defendant wrote the Plan and could have easily added to the subrogation provision a sentence that said "the make whole doctrine shall not apply," but chose not to do so.

This Court, accordingly, holds that since the subrogation provision does not clearly provide to the contrary, the make whole doctrine applies to the subrogation provision.

■ Application of the make whole doctrine to the subrogation provision of the Plan does not conclude the matter. Defendant argues that even if it does not prevail under the subrogation provision, that it is entitled to judgment under the reimbursement provision:

*RIGHT OF REIMBURSEMENT*

If benefits are paid under the policy and You or Your covered Dependent recovers from a responsible third party by settle-

ment, judgment, or otherwise, We have the right to recover from You or Your covered Dependent an amount equal to the amount we paid.

Plaintiff argues that the reimbursement provision is limited by the last sentence of the subrogation provision and that the two provisions must be read in pari materia:

If we are precluded from exercising our right of subrogation, we may exercise our right of reimbursement.

Plaintiff asserts that Defendant's right of subrogation is not "precluded" by the make whole doctrine. The right of subrogation, according to the Plaintiff, applies but is contingent on the Plaintiff being made whole.

Defendant relies on the case of *McIntosh v. Pacific Holding Co.*, 992 F.2d 882 (8th Cir.1993), *cert. denied,* 510 U.S. 965, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993). In *McIntosh,* the plan contained separate reimbursement and subrogation provisions. The court differentiated between the two provisions, noting that the reimbursement clause "creates a contractual obligation for reimbursement" and that the subrogation clause "deals with a statutory or common-law right to subrogation." *Id.* at 884. The court held that the contract language required reimbursement for benefit payments made by the health care plan on behalf of the Plaintiff who had received a third-party settlement. *Id.* at 885.

The Court finds *McIntosh* to be instructive but not controlling authority. *McIntosh* is instructive because it recognizes the different purposes of separate subrogation and reimbursement provisions. It is not controlling because the reimbursement and subrogation provisions of the *McIntosh* plan are materially different than the provisions in this case. Here, the last sentence of the subrogation provision connects it with the reimbursement provision: "If We are precluded from exercising Our Right of Subrogation, We may exercise our Right of Reimbursement". The *McIntosh* plan had no such language linking the reimbursement and subrogation provisions.

The Court, therefore, must be guided primarily by the plain meaning of the words used in the reimbursement and subrogation provisions. The Court, however, notes that the reimbursement and subrogation provisions must serve different purposes or they would be inexplicably duplicative.

The Court holds that the most reasonable interpretation of the sentence "If We are precluded from exercising Our Right of Subrogation, We may exercise Our Right of Reimbursement" is that if the Defendant cannot recover the payments it made on behalf of Plaintiffs by subrogation, then the reimbursement provision applies. A contrary interpretation would make the reimbursement provision surplusage. The Court rejects the Plaintiffs' alternative interpretations as contrary to the plain meaning of the words used and the spirit of the two provisions when read together.

Under the reimbursement provision, Defendant is entitled to reimbursement from Plaintiffs of the $59,303.13 it paid in medical expenses on behalf of Sandra J. Marshall for treatment of injuries that she received in the October 13, 1992 collision.

Accordingly, the Court GRANTS the Defendant's Motion for Summary Judgment and DENIES the Plaintiffs' Motion for Summary Judgment.

It is so ORDERED.