**Martha Ann KING, Plaintiff,**

v.

**PAN AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**No. CIV. A. 4:95–CV–316–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 10, 1996.

---

Clifton M. Patty, Jr., Office of Clifton M. Patty, Jr., Ringgold, GA, for Plaintiff.

Robert Havois Smalley III, McCamy Phillips Tuggle & Fordham, Dalton, GA, for Defendant.

## ORDER

MURPHY, District Judge.

This Employee Retirement Income Security Act ("ERISA") case is before the Court on Defendant's Motion for Reconsideration [17].

## I. Background

On November 15, 1993, Plaintiff was injured in a head-on automobile collision, for which Plaintiff was not responsible. At the time of the collision, Plaintiff's employer provided major medical benefits to Plaintiff and other employees. The employer's medical benefits plan ("Plan") was funded through an insurance policy ("Policy") with Defendant, Pan–American Life Insurance Company.

The Policy contains a "Right of Subrogation" clause that states, in pertinent part:

Subrogation means We have the right to request a refund of payments made by Us under the following conditions:

We will be subrogated to any claim a Covered Person has against a third party provided:

A. The Covered Person was injured ... due to the act or omission of the third party, and

B. We paid benefits to the Covered Person under the Plan for such Injury or Illness.

We can only seek repayment of the amount of benefits We paid.

*If the Covered Person collects any sums for damages from the third party, the Covered Person will be liable to Us for the benefits We paid.* If the Covered Person sues to recover his expenses, We can join in the suit. If the Covered Person does not sue, We can do so in the name of the Covered Person.

*See* Ex. A to Complaint (emphasis added).

Plaintiff suffered severe injuries in the collision and was hospitalized for a significant period of time. Defendant paid approximately $32,877.28 of Plaintiff's medical bills. Subsequently, Plaintiff filed a lawsuit against the third-party driver who caused the collision and, eventually, settled the lawsuit for $100,-000.

Pursuant to the Policy's "Right of Subrogation" clause, Defendant has demanded that Plaintiff reimburse Defendant for the $32,-877.28 Defendant paid on Plaintiff's medical bills. Plaintiff has refused to reimburse Defendant because Plaintiff was not "made

whole" by her $100,000 settlement.[1] The parties have stipulated that Plaintiff would need to receive an additional $133,000 in order to be made whole.

In an Order dated September 11, 1996, this Court concluded that Plaintiff is not required to reimburse Defendant. The Court also agreed with the position adopted by several other courts that, "as a matter of federal common-law, the 'make whole' doctrine applies to ERISA." Order of September 11, 1996 at 9.[2] The Court held that "'in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation' under ERISA." *Id.* (quoting *Barnes v. Independent Auto. Dealers of California*, 64 F.3d 1389, 1395 (9th Cir.1995)).

On September 23, 1996, Defendant filed a Motion for Reconsideration. In its Motion for Reconsideration, Defendant does not claim the Court erred by holding that, in appropriate circumstances, a federal common-law make-whole doctrine applies to subrogation cases arising under ERISA plans. Instead, Defendant:

> Respectfully Moves this Court to reconsider its prior Order based upon the following sentence contained in Defendant's "Right of Subrogation" contract language: "If the Covered Person collects any sums for damages from the third party, the Covered Person will be liable to Us for the benefits We Paid."

Motion for Reconsideration at ¶ 3.

> Defendant contends that the language of the Plan is sufficiently clear and should control because it does state that Defendant has the right of reimbursement upon

the collection by the covered person of **any sums** (emphasis supplied). Plaintiff having recovered $100,000 from the third-party tortfeasor, Defendant's "Right of Subrogation" for the benefits paid is contractually triggered apart from the Federal Common Law "make whole" doctrine, the existence of which was generally recognized by the Court.

Motion for Reconsideration at ¶ 4.

## II. Discussion

### A. Whether Courts Should Apply a Federal Common–Law Make–Whole Doctrine to Employee Benefit Plans Regulated by ERISA

As an initial matter, the Court notes there is a difference of opinion as to whether a federal common-law "make-whole" doctrine may be applied to subrogation cases arising out of ERISA plans. At least two courts have rejected the application of such a doctrine. *See Trustees of Hotel & Restaurant Employees Int'l Union Welfare Fund v. Kirby*, 890 F.Supp. 939, 945 (D.Nev.1995) ("The Court will therefore join the majority of those courts which reject the make-whole doctrine as federal common law.");[3] *Serembus v. Mathwig*, 817 F.Supp. 1414, 1422–23 (E.D.Wis.1992) ("policy considerations of ERISA weigh against creating a federal common law 'make-whole' doctrine.... if each state were permitted to apply its own law relating to subrogation as the federal common law, the congressional intent of ERISA would surely be subverted").

Many other courts, however, have accepted the idea of applying a federal common-law make-whole doctrine as a default rule or

---

1. Plaintiff has incurred additional medical bills, lost wages, and experienced severe pain and suffering. Apparently, Plaintiff is disabled permanently as a result of the collision.

2. Plaintiff has not asserted that Defendant's right to subrogation is subject to the state of Georgia's make-whole doctrine. The Court, therefore, did not and will not address the issue of whether, under Georgia law, Plaintiff has an unpreempted right to be made whole before Defendant's right to subrogation matures. The Court notes, however, that other courts have found state law make-whole doctrines (1) do not regulate insurance; and (2) are preempted by ERISA. *See, e.g., Marshall v. Employers Health Ins. Co.*, 927 F.Supp. 1068, 1073 (M.D.Tenn.1996).

3. It is debatable whether the "majority" of courts have rejected the idea of a federal common-law make-whole doctrine, and the Court believes *Kirby* is not a persuasive decision on this issue. *Kirby*, for example, cited *Cutting v. Jerome Foods, Incorporated*, 993 F.2d 1293, 1299 (7th Cir.1993), as one of the "majority" cases rejecting a federal common-law make-whole rule. *Cutting*, however, did not explicitly reject a federal common-law make-whole rule. *Cutting*, 993 F.2d at 1298–99 ("Fortunately we need not attempt to decide in this case whether the merits of the rule are sufficient on balance to warrant its use as a principle of interpretation of ERISA plans.").

"gap filler" in subrogation cases arising out of ERISA plans. *Barnes v. Independent Auto. Dealers of California,* 64 F.3d 1389, 1394–95 (9th Cir.1995) ("We adopt as federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation."); *Marshall v. Employers Health Ins. Co.,* 927 F.Supp. 1068, 1073–74 (M.D.Tenn.1996) (same); *Murzyn v. Amoco Corp.,* 925 F.Supp. 594, 599–601 (N.D.Ind. 1995) (same); *Sanders v. Scheideler,* 816 F.Supp. 1338, 1347 (W.D.Wis.1993) ("Adoption of the make-whole doctrine as a default priority rule appears consistent with the congressional mandate to fashion federal common law to facilitate the ERISA scheme."), *aff'd* 25 F.3d 1053, 1994 WL 234497 (7th Cir.1994); *cf. National Employee Benefit Trust of the Associated Gen. Contractors of America v. Sullivan,* 940 F.Supp. 956, 959 (W.D.La.1996) ("The make-whole doctrine may be useful in the absence of a clear contractual provision to the contrary or where the plan administrator lacks discretion to construe the plan.") (citations omitted).

■ This Court holds that in the absence of (1) a clear contractual provision to the contrary, or (2) an unarbitrary decision by a plan administrator that, under the language of the plan, the plan is entitled to subrogation even though the beneficiary has not been made whole, a federal common-law make-whole doctrine applies to subrogation cases arising under ERISA plans. Three factors support the Court's holding.

First, the holding is consistent with relevant Eleventh Circuit precedent. *See Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39–40 (11th Cir.1989). In *Guy,* the plaintiff's son was injured in a motorcycle accident. The defendant, a self-funded employee benefit plan regulated by ERISA, paid $74,595.13 of the son's medical bills. *Id.* at 37. Subsequently, the plaintiff sued the third-party tortfeasor responsible for the son's injuries. Approximately one month after the suit was filed against the third-party tortfeasor, the plaintiff entered into a subrogation agreement with the defendant. The subrogation agreement provided:

To the extent that benefits for services are provided hereunder, the [defendant] shall be subrogated and succeed to any rights of recovery of the covered persons because of such services against any person or organization.... The covered persons shall pay over to the [defendant] all amounts recovered by suit, settlement, or otherwise from any third person or his insurer to the extent of benefits provided hereunder.

*Id.* at 38.

Eventually, the plaintiff received $15,000 in proceeds from a settlement reached with the third-party tortfeasor. At the time the plaintiff received the $15,000, the plaintiff's son had outstanding medical bills totalling $19,-784.77. *Id.* at 39.

Several months after the plaintiff received the $15,000, the plaintiff experienced medical problems of his own and submitted a claim ("new claim") to the defendant for expenses totalling $4,316 .81. *Id.* at 38. The defendant refused to pay the plaintiff's new claim because, despite the plaintiff's $15,000 recovery, the plaintiff had not reimbursed the defendant for payments made on behalf of the plaintiff's son. *Id.* at 38.

The plaintiff sued the defendant, challenging the defendant's decision to dishonor the plaintiff's new claim. The *Guy* court concluded that, because the defendant did not have the right to be subrogated to the plaintiff's settlement with the third-party tortfeasor, the defendant arbitrarily had denied coverage on the plaintiff's new claim. *Guy,* 877 F.2d at 39.

The *Guy* court reasoned that, because the plaintiff's son had not been made whole by the settlement with the third-party tortfeasor, "the [defendant] did not have a facially valid right of subrogation compatible with the remedial principles of ERISA at the time it decided to withhold [the plaintiff's] benefits." *Id.* at 39-40 (stating "[i]t is a general principle of subrogation law that an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* received over the total amount of his loss"). Thus, Eleventh Circuit precedent supports this Court's holding.[4]

---

**4.** The *Guy* court recognized "there are possible    exceptions to the general rule" requiring that

The second factor supporting the Court's holding is that the outcome "is consistent with ERISA's purpose of protecting participants in employee benefit plans." *Barnes,* 64 F.3d at 1394–95. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) ("A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans.").

█ The third factor supporting the Court's holding is that the parties are not deprived of the freedom to contract as they please. The drafter of an employee benefit plan can easily avoid application of the federal common-law make-whole doctrine simply by indicating, in explicit contractual terms, that the plan has the right to subrogation even when beneficiaries have not been made whole. The federal common-law make-whole doctrine will apply as a "gap filler" or default rule only where employee benefit plans are silent or ambiguous on the issue of whether the plans are entitled to subrogation in instances where beneficiaries have not been made whole.

**B. Whether the Federal Common–Law Make–Whole Doctrine Should Be Applied to the Policy at Issue in This Case**

█ Defendant's Policy contains a "Right of Subrogation" clause that states, in pertinent part:

> If the Covered Person collects any sums for damages from the third party, the Covered Person will be liable to Us for the benefits We paid.

Ex. A to Complaint (emphasis added).

Defendant asserts the quoted language clearly and unambiguously establishes that Defendant has a right to subrogation, even though Plaintiff has not been made whole. At least one court has agreed with the con-

tractual interpretation underlying Defendant's assertion. *See Fields v. Farmers Ins. Co., Inc.,* 18 F.3d 831, 835–36 (10th Cir.1994) (where contract language provides "the Plan will pay for the injury, subject to ... the Plan being subrogated to any recovery ... you or your dependent has against [a] third party," the Plan is entitled to subrogation even though the beneficiary has not been made whole).

This Court, however, disagrees with the contractual interpretation urged by Defendant and supported by *Fields.* Because Defendant's subrogation clause does not explicitly state that Defendant has the right to be subrogated to "any sums" [5] collected by covered persons, even if the covered persons have not been made whole, the Court believes Defendant should not be subrogated to Plaintiff's recovery from the third-party tortfeasor. *Barnes,* 64 F.3d at 1393 ("We must construe ambiguities in, an ERISA plan against the drafter and in favor of the insured.").

Defendant's subrogation clause simply does not establish any priority for payment of funds recovered from a responsible third-party tortfeasor. The subrogation clause, for example, does not state that Defendant "has the right of first reimbursement." *Marshall v. Employers Health Ins. Co.,* 927 F.Supp. 1068, 1074 (M.D.Tenn.1996). Moreover, the subrogation clause does not state that (1) the make whole doctrine shall not apply; (2) the fund/plan has the right to recover any sums collected by a covered person even if the covered person has not been made whole; or (3) the fund/plan is entitled to reimbursement from any recovery even if the recovery does not fully compensate the covered person for her injury.

The Court, therefore, concludes that because Plaintiff has not been made whole, Defendant cannot recover the $32,877.28 Defendant paid on Plaintiff's medical bills.

---

insureds be made whole in order for ERISA regulated plans to have a right of subrogation. *Guy,* 877 F.2d at 39. The court, however, did not identify the exceptions. This Court assumes the *Guy* court was referring to contractual terms

that explicitly give ERISA plans a right to subrogation even though insureds have not been made whole.

**5.** Ex. A to Complaint.

## III. Conclusion

ACCORDINGLY, the Court **DENIES** Defendant Pan–American's Motion for Reconsideration [17].