## CIRCUIT COURT OF FAIRFAX COUNTY

PRC, Inc.

v.

Joseph A. O'Bryan

July 20, 1998

Case No. (Law) 162061

BY JUDGE JANE MARUM ROUSH

This matter came on for a bench trial on May 20, 1998. At that time, the Court took the case under advisement. For the reasons set forth below, the Court finds in favor of the plaintiff PRC, Inc., and will award it judgment against defendant Joseph A. O'Bryan in the amount of $26,166.00, plus interest at the judgment rate beginning June 13, 1996.

### Background

The facts of this case will be briefly summarized. To the extent the Court's recitation includes facts that were disputed at trial, this summary constitutes the Court's findings of fact. PRC, Incorporated ("PRC") filed a motion for judgment against Joseph A. O'Bryan, PRC's former employee, seeking reimbursement of certain medical and other expenses PRC paid on behalf of O'Bryan under PRC's salary continuation and medical reimbursement plan after O'Bryan was injured in an automobile accident.

O'Bryan was a PRC employee from 1985 to 1993. PRC offers its employees a salary continuation and medical reimbursement plan (the "Plan"). The Plan is self-funded by PRC. In other words, PRC does not purchase insurance in order to satisfy its obligations under the Plan. The Plan in effect

operates as a short-term disability policy. O'Bryan, who participated in the Plan, was injured in an automobile accident in which he was not at fault on June 19, 1992. Pursuant to the Plan, PRC paid O'Bryan's medical expenses and continued his salary following his accident.

The Plan provides, in pertinent part:

> If you … sustain a personal injury caused by a third party and PRC pays for medical treatment related to that injury, then PRC reserves the right to recover the monies it paid for such treatment from any monies paid by the third party responsible for the injury or the third party's insurance company to compensate you for the injury.

Plaintiff's Ex. # 1, p. 28. On August 19, 1992, O'Bryan executed a reimbursement agreement (the "Reimbursement Agreement") with PRC whereby he agreed:

> [S]hould payment be made to me for my expenses, directly or indirectly, for the same or similar medical, dental, or disability expenses as may have been paid by PRC, Inc., or claimed by me to be due and owing by PRC, Inc., then I shall pay or cause such payment to be paid over to PRC, Inc., granting to PRC, Inc., the full and unconditional right of subrogation against any third party for myself and all dependents.

Plaintiff's Ex. # 6. PRC paid O'Bryan a total of $42,918.00 in short term disability benefits and medical expenses as a result of claims he made under the Plan.

O'Bryan filed a personal injury lawsuit seeking damages from the third party who caused his automobile accident. O'Bryan asked PRC to participate with him in pursuing his personal injury lawsuit, but PRC took no part in the litigation. That suit was settled for $45,000.00. After his attorney's fees of one-third of the settlement amount and other costs were paid, O'Bryan received $27,435.00 in net proceeds from the settlement. O'Bryan has not reimbursed PRC for any of the expenses PRC paid pursuant to the Plan.

## *Issues*

The issue in this case is whether O'Bryan owes reimbursement to PRC for all or part of the $42,918.00 that PRC paid to him or on his behalf pursuant to the Plan.

## I. *ERISA Pre-Emption of State Law*

O'Bryan first claims that the Reimbursement Agreement is invalid under Va. Code Ann. § 38.2-3405. That statute provides, in part:

> A. No insurance contract providing hospital, medical, surgical and similar or related benefits, and no subscription contract or health services plan delivered or issued for delivery or providing for payment of benefits to or on behalf of persons residing in or employed in this Commonwealth shall contain any provision providing for subrogation of any person's right to recovery for personal injuries from a third person.
>
> B. No such contract, subscription contract, or health services plan shall contain any provision requiring the beneficiary of any such contract or plan to sign any agreement to pay back to any company issuing such a contract or creating a health services plan any benefits paid pursuant to the terms of such contract or plan from the proceeds of a recovery by such a beneficiary from any other source ... .

Va. Code Ann. § 38.2-3405(A) and (B).

The Court finds that Virginia Code § 38.2-3405 is not applicable in this case. The Plan is a self-funded employee benefit plan that is regulated by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). Under the so-called "deemer clause" of ERISA, 29 U.S.C. § 1144(b)(2)(B), no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for the purposes of any law of any State purporting to regulate insurance companies, [or] insurance contracts ... ." The United States Supreme Court, in interpreting the "deemer clause," has held that uninsured, employer-funded plans such as PRC's Plan are exempt from state regulation, including anti-subrogation statutes similar to Va. Code § 38.2-3405. *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S. Ct. 403 (1990) (self-funded ERISA plan exempt from Pennsylvania anti-subrogation statute). *See also, Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649 (4th Cir. 1990); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990), *cert. denied*, 498 U.S. 982 (1990). Accordingly, this Court holds that the Reimbursement Agreement is not unenforceable as violative of Va. Code Ann. § 38.2-3405.

## II. *The Applicability of the "Make Whole" Doctrine*

O'Bryan next maintains that PRC is not entitled to any payment under the Reimbursement Agreement until O'Bryan is fully compensated for his damages resulting from the automobile accident. O'Bryan testified that he settled his suit for an amount far below his actual damages. He testified that his medical expenses at the time of the earlier settlement were $37,000.00 and that he has incurred an additional $3,000.00 in medical expenses since the time of the settlement. In addition, he claims to have incurred costs of approximately $6,650.00 in expert witness fees in the earlier litigation. He testified he has other damages from the accident, including reimbursement for 6,000 miles he drove his personal car in traveling to and from doctors, reimbursement for 2,000 to 3,000 miles driven to and from meetings with his lawyers and court appearances, $3,000.00 to hire handymen to do chores he can no longer perform, "extra taxes" of $3,200.00 and $1,600.00 to $1,700.00 for a tilt table. In sum, he claims his actual out-of-pocket expenses for the accident were approximately $57,000.00. In addition, he claims to have been undercompensated for his pain and suffering.

O'Bryan argues that the "make whole" doctrine applies in this case to bar PRC's recovery. "Under the make whole doctrine, an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* received over the total amount of his loss." *Cagle v. Brunner,* 112 F.3d 1510 (11th Cir. 1997) (emphasis in original). Pursuant to that doctrine, "[i]t is a general equitable principal of insurance law that absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Barnes v. Independent Auto. Dealers Ass'n of Cal.,* 64 F.3d 1389, 1394 (9th Cir. 1995). O'Bryan argues that, because he did not recover more than his actual damages, he is not liable to PRC for any amounts under the Reimbursement Agreement.

O'Bryan's reliance on the make whole doctrine is misplaced for three reasons. First, the make whole doctrine, by its terms, applies only to *subrogation* claims. Here, PRC is seeking to enforce its right to *reimbursement* from O'Bryan under the Reimbursement Agreement. *See McIntosh v. Pacific Holding Co.,* 992 F.2d 882 (8th Cir.), *cert. denied,* 510 U.S. 965 (1993) (distinguishing subrogation and reimbursement). The distinction between subrogation and reimbursement is most clearly illustrated in *Marshall v. Employers Health Ins. Co.,* 927 F. Supp. 1068 (M.D. Tenn. 1996). In that case, the plan participant was not made whole by her recovery from the third party tortfeasor. The court ruled that the plan was precluded by the make

whole doctrine from exercising its subrogation rights. Nevertheless, the plan was awarded all expenses it paid on behalf of the plan participant under its reimbursement agreement with the participant. The court noted that "the reimbursement and subrogation provisions must serve different purposes or they would be inexplicably duplicative." 927 F. Supp. at 1075.

Second, although some cases have held that the make whole doctrine operates as a default rule or a "gap-filler" in ERISA cases, *see. e.g., Cagle*, 112 F.3d at 1521, a plan and its participant may opt out of the make whole doctrine through clear contractual language. It has been held that a reference in a subrogation clause that the insurer is subrogated to "any" or "all" rights of recovery overrides the rule. *Fields v. Farmers Ins. Co.*, 18 F.3d 831, 835-36 (10th Cir. 1994). In this case, the subrogation clause of the Plan states: "PRC reserves the right to recover the monies it paid for such treatment from *any* monies paid by the third party responsible for the injury ... ." Plaintiff's Ex. # 1, at p. 28 (emphasis added). The Court concludes that PRC's express subrogation right to *any* monies paid to O'Bryan by a third party tortfeasor overrides the make whole doctrine.

Third, even if the make whole doctrine were to apply to this case, the Court makes the determination as the finder of fact that O'Bryan was made whole by his settlement with the third party tortfeasor. O'Bryan's testimony about his out-of-pocket damages was completely lacking in supporting documentation. Some of his damage claims were clearly inflated and caused the Court, as the finder of fact, to have serious doubts about the credibility of his testimony as to his damages.

### III. *Attorney's Fees*

A final issue is whether PRC's claim should be reduced by a *pro rata* portion of O'Bryan's attorney's fees incurred in obtaining the settlement from the third party.

PRC has cited the Court to cases in which the plan is permitted to recover from the participant the full amount of benefits it paid without reduction for the participant's attorney's fees. *See, e.g., Bollman Hat Co. v. Root*, 112 F.3d 113 (3d Cir.), *cert. denied*, 118 S. Ct. 373 (1997); *Ryan v. Federal Express Corp.*, 78 F.2d 123 (3d Cir. 1996); *Health Cost Controls v. Isbell*, 1997 WL 863987 (6th Cir. 1997); *IBP, Inc. v. Foust*, 987 F. Supp. 714 (N.D. Iowa 1997); *Health and Welfare Plan for Employees of REM, Inc. v. Ridler*, 942 F. Supp. 431 (D. Minn. 1996). *aff'd*, 124 F.3d 207 (8th Cir. 1997). In each of those cases, however, the plan participant recovered from the third party an amount in excess of the plan's claim plus the attorney's fees incurred in

obtaining the recovery. Here, O'Bryan received only $27,435.00 in net settlement proceeds, some $15,483.00 *less* than PRC's claim of $42,918.00. PRC has cited no case in which the plan participant was required to reimburse the plan for an amount greater than he or she received from the third party after payment of attorney's fees. Indeed, in the principal case relied upon by PRC, *Bollman Hat Co. v. Root, supra*, the court in *dicta* noted the seeming unfairness of applying its holding to cases "where a plan participant's third party recovery is less than the plan's subrogation claim plus attorney's fees." 112 F.3d at 117.

Several cases support O'Bryan's argument that PRC's claim must be reduced by a proportionate share of the attorney's fees incurred in obtaining the recovery from the third party. *See, e.g., Seremus v. Mathwig*, 817 F. Supp. 1414 (E.D. Wis. 1992); *United McGill Corp. v. Stinnett*, 950 F. Supp. 134 (D. Md. 1996); *Dugan v. Nickla*, 763 F. Supp. 981 (N.D. Ill. 1991). As the court in *Dugan v. Nickla* observed:

> In this case … defendant's verdict benefits the [Plan]. Had defendant not engaged an attorney and pursued his case, the [Plan] would not have recovered any of the benefits paid concerning defendant's [injuries]. Since the [Plan] benefits from defendant's pursuit of his case, one-third reduction of the [Plan's] share of the verdict fairly apportions the attorney's fee.

763 F. Supp. at 684-85.

In this case, PRC declined to participate in any way in O'Bryan's efforts to obtain compensation in his personal injury lawsuit. In *Klacik v. Kovacs*, 11 N.J. Super. 307, 268 A.2d 305 (1970), the court reasoned that, "[w]here the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees." *Klacik*, 268 A.2d at 307, *quoting United Services Auto. Ass'n v. Hills*, 172 Neb. 128, 133, 109 N.W.2d 174, 177 (1961).

The Court concludes that PRC's claim will be reduced by its proportionate share of the attorney's fees and costs incurred in obtaining the settlement fund. The Court finds that the amount of the attorney's fees and costs incurred in obtaining the settlement total $17,565.00. Plaintiff's Ex. # 29. The Court finds that PRC's proportionate share of those expenses is $16,752.00. PRC's claim of $42,918.00 will be reduced by $16,752.00. Judgment will be entered in favor of PRC for $26,166.00.

## *Conclusion*

For the foregoing reasons, the Court finds in favor of the plaintiff PRC, Inc., and will enter an order awarding it judgment against defendant Joseph A. O'Bryan in the amount of $26,166.00, plus interest on that amount at the judgment rate beginning on June 13, 1996, and continuing until paid.