TENNESSEE FARMERS MUTUAL INSURANCE
COMPANY, Appellant, v. GLENN PRITCHETT and
ST. PAUL FIRE and MARINE INSURANCE
COMPANY, Appellees. —391 S.W.(2d) 671.

Middle Section.  October 30, 1964.

Certiorari Denied by Supreme Court March 1, 1965.

Thos. O. H. Smith, Jr., W. P. Ortale, Nashville, for appellant.

C. Allen High, Nashville, for appellee Glenn Pritchett.

Frank Gorrell, J. O. Bass, Jr., Nashville, for appellee St. Paul Fire & Marine Ins. Co.

HUMPHREYS, J. This is an appeal by Tennessee Farmers Mutual Insurance Company from an adverse decree in a suit in which appellant is seeking a recovery which would benefit it in the amount of $117.06, from Glenn Pritchett and St. Paul Fire and Marine Insurance Company.

Tennessee Farmers insured Pritchett under a policy of insurance providing $50.00 deductible collision coverage on his automobile. In July, 1960, while Pritchett was stopped at a red light, his car was struck in the rear by an automobile driven by an insured of St. Paul Fire & Marine Insurance Company. Tennessee Farmers established Pritchett's damage at $401.19 and paid him $351.19

under his policy, taking his subrogation receipt. This was on August 4, 1960, and on August 20, 1960, Tennessee Farmers, by letter to Bates Southall, claim representative of defendant St. Paul Fire, notified it of the payment and subrogation receipt. Southall, by letter of August 29, 1960, acknowledged receipt of this letter and said that when Pritchett's claim for personal injuries was settled, the subrogation interest "would be kept in mind". On February 14, 1961, Southall informed Roy Crabtree of Tennessee Farmers, both by telephone and letter that he was being required to pay the subrogation interest into court along with the personal injury settlement. So, that day, Crabtree called attorney Allen High who, with another attorney, Zager, had represented Pritchett, and requested him to forward the subrogation interest to complainant when the money was taken out of court. Mr. High complied by sending a check for the subrogation interest to complainant, but deducted one-third as his attorney's fee for his services. This check was returned to Mr. High and he still holds it.

Tennessee Farmers contended that Pritchett could not pursue this property damage or make a settlement in regard thereto without its consent. That complainant was not notified of the suit and had no knowledge with respect thereto until advised by Southall an amount of money in settlement thereof was being paid into court, and that it was entitled to a judgment against Pritchett for the amount of its subrogation claim of $351.19 or, was entitled to a judgment against defendant St. Paul Fire etc. for having accepted and acknowledged notice of said subrogation claim and thereafter, wrongfully, having paid the money to Pritchett.

Pritchett defended on the ground that in order for him to recover his damages from the party who ran into him it was necessary for him to institute suit, and in order for him to do this he employed counsel by written contract and agreed to pay a fee of twenty-five per cent of the amount of recovery in case of settlement without suit, and one-third of the recovery if suit was necessary. That suit was necessary, so he sued to recover all the damages suffered by him, which he was advised by his attorney was the only way suit could be instituted so as to recover both property and personal injury damages.

Pritchett contended further that although Tennessee Farmers knew he had employed counsel, and that suit would likely be necessary, it did not communicate with his attorneys, and took no action to protect or enforce its subrogation rights until after the parties had worked up and carried out a compromise settlement in the amount of $4,000.00, after which Tennessee Farmers manifested interest and sought to recover the whole amount to which it claimed subrogation.

St. Paul Fire & Marine Insurance Company defended on the ground that it had carried out the understanding between Southall, its claims representative and Crabtree, the representative of Tennessee Farmers, by advising Crabtree of the settlement and the fact the money would be paid into court pursuant to the judgment, where it would be distributed by the clerk. That Crabtree made no objection to this arrangement and advised Southall he would contact attorney High and advise him as to his company subrogation rights. That Crabtree made no objection to this arrangement, which it took therefore to be assent. And, that if objection had been made St. Paul Fire could have advised its attorneys thereof and other

arrangements could have been made for perfecting the settlement. But, complainant having acquiesced in the manner of the settlement, it had no claim against it.

The Chancellor heard the case on oral testimony and filed a memorandum as follows:

"Since the facts in this case are not in dispute I will make no finding of fact unless requested so to do.

First, complainant's bill should be dismissed as to St. Paul Fire and Marine Insurance Company for the very reasons set out in that defendant's brief, namely:

'1. This defendant paid the insured through the Circuit Court and pursuant to a judgment of that Court, rather than on a voluntary basis.

'2. Complainant was notified of such payment prior to the date on which it was made and consented to this method of payment.

'3. This defendant paid the money involved into Court in reliance on complainant's consent to this procedure and is therefore estopped to claim an additional payment from this defendant.'

The original bill should also be dismissed as to the defendant, Glenn Pritchett.

To me this case is another glaring example of an insurance company sitting back on its haunches, doing nothing and waiting to get its share of a claim procured by attorneys, but not wanting to pay its share of an attorney's fee.

Mr. Allen High, attorney for Mr. Pritchett, filed his lawsuit for personal injury and property damage. Through his efforts a settlement was reached to cover

both personal injury and property damage and the money paid into Court. During this time the representative of the complainant called Mr. High and asked him to look after his company's interest. To this Mr. High agreed. Certainly Mr. High did not expect to do this for love and affection.

The unreported case of St. Louis Fire and Marine Insurance Company v. Sam McGhee is authority upon which to base a decision in this case.

The unreported case of Central National Insurance Co. v. Lester is not applicable. From a factual standpoint the two cases are entirely different. Mr. High is entitled to his fee.

Tax complainant with the cost and decree accordingly.

NED LENTZ

Ned Lentz,
Chancellor''

This April 15, 1964.

We are constrained to agree with the Chancellor, being of opinion the evidence not only does not preponderate against his decree, but in favor thereof. With respect to St. Paul Fire it clearly appears it paid Pritchett through the Circuit Court and pursuant to a judgment of that court, rather than on a voluntary basis.

It is also clear Tennessee Farmers was notified of such payment prior to the date on which it was made and consented to the method of payment.

We agree with the proposition made by counsel for St. Paul Fire that Tennessee Farmers' consent to the manner of St. Paul Fire's meeting its obligation under its correspondence with Tennessee Farmers constituted,

in equity, a release of any claims against St. Paul Fire
it might have thereunder, so that it would be inequitable
now to go back of this arrangement between them and
hold St. Paul Fire liable on an agreement which, at best,
actually bound St. Paul only to do what it could to pro-
tect Tennessee Farmers interest.

With respect to Pritchett, it is clear Tennessee Farm-
ers understood from the very beginning Pritchett would
require the services of counsel in settling or recovering
for his injuries. On August 20, 1960, the same day it took
the release and subrogation receipt, it wrote Mr. Bates
Southall, saying in part as follows:

"We realize that our insured was injured and possibly
it will be some little time before he might be able to
conclude settlement."

And, on August 29, 1960, Southall wrote Crabtree ac-
knowledging advice with respect to Tennessee Farmers
subrogation rights and in that letter said:

"Due to the fact that your insured was injured *and is
represented,* we anticipate this settlement will be pend-
ing for quite some time, but we shall keep your subro-
gation interests in mind when a final settlement is made
with your insured." (Our emphasis)

Tennessee Farmers was also charged with constructive
knowledge there could be no recovery for damages for
personal property injury except in Pritchett's suit. The
History of a Lawsuit, 8th Ed. sec. 153, states this as the
rule:

"A single tort can be the basis of but one action. It
is not improper to declare in different counts for dam-
ages to the person and property where both result from
the same tort, and it is the better procedure to do so

where there is any difference in the measure of damages and all the damages sustained must be sued for in one suit. A single tort can be the foundation of but one cause of action; if the plaintiff assigns his right to sue for property damage, the assignee cannot, after the plaintiff has recovered a judgment for personal injuries, maintain a separate action against the wrongdoer to recover damages for the injury to the personal property." History of a Lawsuit, 8th Ed., sec. 153, p. 183.

In this situation, being advised Pritchett had engaged the services of counsel to recover his damages, and having constructive knowledge the personal property damages had to be recovered in that same proceeding or be barred, Tennessee Farmers did nothing to protect its interests from the necessary oneration of attorneys' fees, but sat silently by apparently expecting in the end to be paid in full.

But, we do not think it is entitled to be so paid. It is fundamental that one cannot sit silently and permit another, who obviously expects to be paid, to perform valuable services for him and then not be liable for the reasonable value thereof. Murray v. Grissim, 40 Tenn. App. 246, 290 S.W.(2d) 888, quotes with approval from Sir William Anson and Professor Williston, the following:

"If A allows X to work for him under such circumstances that no reasonable man would suppose that X means to do the work for nothing, A will be liable to pay for it. The doing of the work is the offer, the permission to do it, or the acquiescence in its being done constitutes the acceptance." (Anson's Law of Contract, 18th ed. 1937) p. 14.

"And even though no request is made for the performance of work or service, if it is known that it is being rendered with the expectation of pay, the person benefited is liable" (1 Williston, Contracts, rev. ed. 1936, sec. 36). 40 Tenn.App. 250-251, 290 S.W. 891.

(See also *Melvin Butler et al. v. General Motors Acceptance Corp.*, 203 Tenn. 366.)

■ Under these facts and authorities, and since this is an action in equity to enforce a subrogation right where the rule is the result must be equitable, Elledge v. Sumpter, 140 Tenn. 11, 203 S.W. 346, and that subrogation will not be granted to one guilty of negligence (as Tennessee Farmers was in taking no action whatsoever with respect to its right of subrogation after being advised Pritchett had employed counsel to represent him, and that obviously attorney fees would accrue on the recovery of personal property damages, which, if recovered at all, had to be recovered in the one action), we do not think Pritchett should be called on to bear the expense of the attorney fees relating to the subrogation rights. These expenses accrued for the benefit of Tennessee Farmers, not Pritchett, who, under this record, had no interest in a recovery on the personal property damage. If Pritchett had instructed his counsel not to include the personal property item, Tennessee Farmers would get nothing. It is fortunate this was not done. Now it gets its full subrogation right less only a reasonable attorney's fee.

On the basis of this discussion and these authorities we overrule all of the assignments of error and affirm the decree of Chancellor Lentz.

Shriver and Chattin, JJ., concurring.