**BOSTON, BATES & HOLT,**
**Plaintiff–Appellant,**

v.

**TENNESSEE FARMERS MUTUAL**
**INSURANCE COMPANY,**
**Defendant–Appellee.**

Supreme Court of Tennessee,
at Nashville.

June 28, 1993.

Paul A. Bates, Charles W. Holt, Jr., Boston, Bates & Holt, Lawrenceburg, for plaintiff-appellant.

T. Edward Lawwell, Lawwell, Dale & Graham, Columbia, for defendant-appellee.

## OPINION

REID, Chief Justice.

The record supports the trial court's decision that the plaintiff's attorneys are entitled to a fee for services performed in asserting a subrogation claim on behalf of their client's insurer against the third party tort-feasor, which decision was reversed by the Court of Appeals.

On May 20, 1989, an automobile owned and operated by Robert S. Beckham was involved in a collision with an automobile operated by Paula L. Coggins. Beckham was insured by Tennessee Farmers Mutual Insurance Company, the defendant in this case, under a policy that included coverage for medical expenses incurred by the insured. The policy granted Tennessee Farmers the right of subrogation against third party tort-feasors for medical payments made to its insured. Aetna Life and Casualty Insurance Company was the liability insurance carrier for Coggins.

The essential facts are not disputed. Payments for medical expenses incurred by Beckham for treatment of personal injuries sustained in the accident were made by Tennessee Farmers between June 7, 1989 and May 10, 1990, in the total amount of $3,752.60.

On February 6, 1990, Tennessee Farmers notified Aetna of its subrogation claim for medical expenses, the total amount of which was undetermined at that time. Aet-

na apparently agreed with Tennessee Farmers to honor the subrogation claim.

On March 8, 1990, Beckham employed the law firm of Boston, Bates and Holt, the plaintiff in this case, to represent him in an action for damages sustained in the accident. On that same date, attorney Paul A. Bates notified Tennessee Farmers of the law firm's employment and requested certain information regarding medical expenses which his client had incurred. Tennessee Farmers furnished the medical information requested. That was the only communication between Tennessee Farmers and Bates prior to suit being filed. Neither Bates nor his client was advised by Tennessee Farmers or Aetna that Aetna had agreed to honor the subrogation claim until after suit had been filed and a tentative settlement agreement reached.

On May 17, 1990, three days before the anniversary of the accident, Bates filed suit on behalf of Beckham against Coggins for personal injuries and medical expenses. In a conversation between Bates and a Tennessee Farmers claims representative, subsequent to the filing of the suit, the claims representative told Bates "not to forget [Tennessee Farmers' subrogation claim]." The claims representative did not at that time advise Bates that Aetna had agreed to honor the subrogation claim. However, during the time that Bates was negotiating with Aetna, he was told by Tennessee Farmers that Aetna had agreed to honor the subrogation claim, provided Beckham consented. Bates, on behalf of Beckham, refused to consent.

In October 1990, Bates settled Beckham's claim against Coggins for $16,000.00. He advised Tennessee Farmers that payment for the amount of the subrogation claim less 33⅓ percent for attorneys fees would be forthcoming. Tennessee Farmers refused to accept less than the total amount of the claim; whereupon, Boston, Bates & Holt filed this present suit seeking the recovery of a "reasonable" fee.

The trial court found that plaintiff is entitled to 33⅓ percent of the amount of the subrogation claim. The Court of Appeals reversed, on the ground that there was no agreement between Tennessee Farmers and the law firm for legal services and the plaintiff failed to show that the defendant accepted benefits under circumstances "implying a promise to pay."

The issue presented by this case was considered by this court in *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587 (Tenn. 1976), and by the Court of Appeals in *Tennessee Farmers Mut. Ins. Co. v. Pritchett*, 54 Tenn.App. 410, 391 S.W.2d 671 (1964), and *Motors Ins. Corp. v. Blakemore*, 584 S.W.2d 204 (Tenn.App.1978). Bates relies upon *Pritchett*, in which the Court of Appeals held that the insurer was obligated to pay its insured's attorney a fee for collecting a subrogation claim. That court found an implied contract to pay a reasonable attorneys fee for recovery of the subrogation claim where the insurer acquiesced in the action of the insured's attorney on its behalf. Tennessee Farmers relies upon *Blakemore* and *Williams*, in which cases the court found that because the insurer notified the insured's attorney prior to the performance of beneficial services that it would handle its own subrogation claim the attorney was not entitled to a fee.

The applicable legal principle is recognized in all of the above cases. It is stated in *Williams*, as follows:

> There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others. But, an exception to this rule is made whenever one person, having assumed the risks and expense of litigation, has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common. In that event, the expenses of the action are borne by each participant according to his interest. The fairest and most efficient means of distributing these costs is thought to be to make them a charge upon the fund itself. This device, known as the 'fund doctrine,' was invented by

courts of equity to prevent passive beneficiaries of the fund from being unjustly enriched. It is, therefore, never applied against persons who have employed counsel on their own account to represent their interests. Thus, the right to employ counsel of one's own choosing is preserved.

. . . . .

Varied fact situations are disclosed by the reported cases dealing with this problem. We doubt the advisability of attempting to devise a single 'rule' to govern all such cases, whatever the facts might be. Instead, each case, with its peculiar facts must be decided by applying general, fundamental principles of contract law.

. . . . .

It follows that whether or not an attorney is entitled to collect from the insurer a fee with respect to a subrogation claim depends upon whether an express or implied contract or a quasi contractual relation exists between them.

541 S.W.2d at 589–90 (citations omitted).

In the present case, the communication between Tennessee Farmers and Bates does not evidence an express contract of employment. However, the circumstances of this case demonstrate a classic example of implied contract.

An implied contract is one not created or evidenced by the explicit agreement of the parties, but inferred by the law, as a matter of reason and justice from their acts or conduct, the circumstances surrounding the transaction making it a reasonable, or even a necessary, assumption that a contract existed between them by tacit understanding.

Black's Law Dictionary 323 (6th ed. 1990).

■ Analysis of the relationship between Tennessee Farmers and Bates must begin with the recognition that an attorney owes the duty to his or her client to protect all the client's rights and assert all claims to which the client is entitled. A single tort, as in this case, gives rise to but one cause of action, which is not severable and which must be asserted in one suit. *See*

*Pritchett* 391 S.W.2d at 674–75 (citing Sam B. Gilbreath & Bobby R. Aderholt, *History of a Lawsuit*, § 153, at 183 (8th ed. 1963)). That suit is subject to the general control of the insured. Lawyers frequently must file suit or take other action to protect their clients' interests before all the precise information regarding the existence of insurance and/or the terms of the coverage can be sorted out. The lawyer necessarily incurs expense and responsibility upon assuming representation of the insured. Even though the insurer becomes the real party in interest to a subrogation claim, that claim cannot be asserted to the detriment of the insured. *Williams* 541 S.W.2d at 590. These circumstances must be taken into account in determining the legal relationship between the insurer and the insured's legal counsel.

■ The principle recognized in *Williams, Pritchett* and *Blakemore* is: after notice to the insurer by the insured's attorney of his/her representation, the attorney will be entitled to be compensated for services rendered the insurer until such time as the attorney is notified by the insurer that it will be responsible for asserting its claim for subrogation. Though not applicable in this case, the complement to this rule is that at such time as the attorney for the insured may learn of any conflict of interest or other circumstance that will preclude his or her representation of the insurer's interest, the insurer must be so advised.

■ In the present case, Bates advised Tennessee Farmers' of his representation. That company's response was, at best, equivocal. Under these circumstances, the insured's attorney could not safely abandon any portion of his client's cause of action. Consequently, he is entitled to be compensated for services rendered until he was notified by Tennessee Farmers that his services were not required.

■ Tennessee Farmers, however, is not bound by the terms of the agreement regarding compensation made by Beckham and Bates. Bates is entitled to reasonable compensation under the circumstances.

*See Krause v. State Farm Mut. Automobile Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601, 605–06 (1969). Since the record does not disclose the basis on which the trial court arrived at the fee awarded, that determination will be made by the trial court on remand.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court. Costs are taxed to the defendant-appellee.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.