IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2020 Session

## LASCASSAS LAND COMPANY, LLC v. JIMMY E. ALLEN, ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 15CV-1008     Hamilton V. Gayden, Jr., Judge**

_____

### No. M2019-00870-COA-R3-CV

_____

This is the second appeal of this case involving a dispute between two limited liability companies (and an individual with interest in both companies). In the first appeal, this Court remanded the case for the trial court to consider and make appropriate findings concerning the applicability of the doctrines of unjust enrichment and unclean hands. On remand, the trial court held that Appellee had met its burden to show that Appellant would be unjustly enriched if it were allowed to retain Appellee's construction costs in addition to the stipulated value of the lots, and the profits from the sales of the homes constructed on those lots. The trial court further held that Appellee was not barred from recovery under the doctrine of unclean hands. The trial court also awarded Appellant a portion of its claimed attorney's fees and costs. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Matthew R. Zenner, Brentwood, Tennessee, for the appellant, Lascassas Land Company, LLC.

Terry A. Fann and S. Chase Fann, Murfreesboro, Tennessee, for the appellee, A & R Land Investments, LLC.

Bert W. McCarter, Murfreesboro, Tennessee, for the appellee, Jimmy E. Allen.

# MEMORANDUM OPINION[1]

## I. Background

The relevant background facts are set out in our previous opinion, ***Lascassas Land Co., LLC v. Jimmy E. Allen, et al.***, No. M2017-01400-COA-R3-CV, 2018 WL 1733449 (Tenn. Ct. App. April 10, 2018) ("***Lascassas I***"). In the interest of consistency, we restate the pertinent facts and procedural history from ***Lascassas I***:

Lascassas Land Company, LLC, was formed in 2000 to own and develop real estate lots in Farmington Subdivision in Murfreesboro, Tennessee. The subdivision was originally platted for 183 lots. By 2015, Lascassas had only four of those subdivision lots remaining for sale, and Lascassas also owned one 14–acre parcel of property. Lascassas had only one debt—a promissory note to a local bank with a remaining balance of approximately $23,600. The three members of the LLC, at this time, were Percy Dempsey, Joseph Boone, and Jimmy Allen. The relationship among the three members had deteriorated to the point that they were involved in several lawsuits regarding other matters and business entities.

Percy Dempsey served as the chief manager or managing member of Lascassas, and he was the only member with general authorization to execute deeds and other instruments pertaining to the business of the LLC. Dempsey and his administrative assistant handled the accounting work for Lascassas. In June 2014, the aforementioned promissory note matured, and Lascassas stopped receiving monthly statements from the local bank regarding the promissory note. Dempsey contacted the bank to inquire about the status of the note and learned that Jimmy Allen had purchased the note from the bank for roughly $23,800. However, Allen never contacted Dempsey or Boone to inform them that he had purchased the note or to discuss payment terms.

In mid-May 2015, Dempsey arranged for someone to mow the grass on the four vacant subdivision lots owned by Lascassas. Shortly thereafter, the individual contacted Dempsey and informed him that houses were being constructed on two of the four lots. Dempsey contacted the attorney who

---

[1] Tenn. R. Ct. App. 10 states:

This court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

- 2 -

Lascassas used for real estate closings, and upon investigation, he discovered that the four lots had recently been conveyed by quitclaim deed, on April 16, 2015. The quitclaim deed purportedly conveyed the four lots from Lascassas to A & R Land Investments, LLC. Allen had signed the quitclaim deed on behalf of the grantor, Lascassas. Allen was also one-half owner of the grantee, A & R Land Investments, LLC.

Lascassas instituted the present litigation on July 10, 2015, with the filing of a complaint against Allen and A & R. The complaint alleged that Allen had conveyed the four lots to A & R without the knowledge or authorization of Lascassas. The complaint alleged that Allen breached his fiduciary duties to Lascassas and converted the lots to the detriment of Lascassas. It asked the trial court to declare the quitclaim deed null and void, or in the alternative, to grant Lascassas a judgment for the value of the lots. Lascassas also sought an award of punitive damages. In addition, Lascassas filed notice of a lien lis pendens claiming rightful ownership of the four lots.

When the complaint was filed on July 10, 2015, the two homes being constructed by A & R were nearly sixty percent complete. A & R proceeded with construction despite the filing of the complaint and the lien lis pendens. A & R filed a motion to release the lien lis pendens in order to enable it to place the homes on the market for sale unencumbered. Lascassas opposed the motion and also filed an amended complaint seeking the imposition of a constructive trust over the properties and any profits derived from them.

While the litigation was pending, the parties agreed to obtain an appraisal of the four lots. Lots 99 and 100, which remained vacant and needed significant site work, were valued at $25,000 each. Lots 109 and 110 were valued at $48,000 each.

The parties attended mediation and reached a partial settlement agreement. An agreed order was entered on May 13, 2016. It provided that A & R would convey the two vacant lots, Lots 99 and 100, back to Lascassas. The agreed order further provided:

> Lots 109 and 110 have been improved by the construction of homes. There are contracts for the sale of these homes, which are to close at the end of May 2016 if [Lascassas] will release their Lien Lis Pendens. Therefore, [Lascassas] agree[s] to release the Lien Lis Pendens upon being presented with a Good Faith Estimate of Closing Cost, which they approve, on

the condition that all proceeds that exceed the approved Good Faith Estimate are paid by the closing agent into this court.....

[ ] The parties will then have the right to litigate all issues that are a subject to this lawsuit and these proceeds at a later time.

After the filing of this agreed order, A & R tendered the proceeds from the sales of the homes to the clerk of the court. Lot 109 sold for $331,000, and Lot 110 sold for $357,900. The net proceeds from the sale of Lot 109 totaled $312,949.56, and the net proceeds from the sale of Lot 110 totaled $339,667.95. Thus, a total of $652,617.51 was deposited with the clerk.

A & R then filed a motion for payment of its construction expenses. According to A & R, the only amounts deducted from the sale proceeds prior to the tender to the clerk were for real estate commissions and closing costs. A & R asserted that it spent $242,816.52 constructing the house on Lot 109 and $269,978.55 constructing the house on Lot 110. Accordingly, A & R sought an order directing the clerk to pay A & R a total of $512,795.07 for its construction costs from the sale proceeds.

Lascassas filed a response to the motion for payment of construction costs asserting that it was the rightful owner of the lots on which the homes were constructed and the sale proceeds. Lascassas noted that A & R had not asserted any type of legal claim as the basis for its motion for reimbursement of its construction costs. Lascassas argued that A & R's only conceivable claim would be one for an equitable remedy such as unjust enrichment, and Lascassas argued that A & R would be barred from such an equitable remedy in light of its unclean hands.

A & R then filed a motion to amend its answer and to assert a counterclaim for unjust enrichment. The motion was granted, and A & R filed a counterclaim asserting that Lascassas would be unjustly enriched if it was permitted to retain all of the proceeds from the sales of the homes without paying A & R for the costs of construction. A & R sought a judgment against Lascassas for the costs of construction. Lascassas filed an answer to the counterclaim, maintaining that the unauthorized quitclaim deed to A & R was void and that A & R constructed the homes at its own peril, with full knowledge that it was not the rightful owner of the lots and in the position of a trespasser. Lascassas asserted that A & R was barred from the equitable remedy of unjust enrichment under the doctrine of unclean hands.

The trial court held a two-day bench trial in February 2017. . . .

- 4 -

***

The trial court entered its final order on June 23, 2017. The court made numerous factual findings at the outset. The trial court found that Allen quitclaimed the four Farmington subdivision lots from Lascassas to A & R, signing the deed purportedly as a representative of the grantor, Lascassas. The trial court found that no vote was conducted by the members of Lascassas and that "Allen had no authority to sign the Quitclaim deed on behalf of Lascassas." The trial court further found that Allen understood, at the time he executed the quitclaim deed, that only the chief manager, Dempsey, had authority to execute deeds on behalf of Lascassas. The court found that Allen did not give Dempsey or Boone notice that he intended to transfer the lots and that the deed purporting to convey the four lots "was made without the knowledge of Lascassas or its other members." At the same time, however, the trial court found that "[d]ue to pre[viou]s dealings be[t]ween the entities, it was understood [b]etween Lascassas and A & R that paym[e]nt for the lots would be made [wh]en construc[tion] was completed and [the] homes sold." The trial court found that the transaction "was recorded as a $105,000 payable *to Allen* on A & R's books." (Emphasis added.) The court found that "[t]he intent of the transaction was that A & R would build on the lots and Church and Allen, as the members of A & R, would split the profits."

In the section of the order entitled "Conclusions of Law," the trial court first found that the quitclaim deed executed by Allen "was a valid transfer of title to A & R." As such, the court concluded that the titles to Lots 109 and 110 were validly transferred to the new owners of the properties, and Lots 99 and 100 were transferred back to Lascassas.

Next, the trial court found that "Allen breached no fiduciary duty because no meaningful fiduciary relationship existed between the members of Lascassas at the time of the transfer."

***

With regard to this statute [Tennessee Code Annotated section 48-240-102(a)-(b)], the trial court found that "Allen's actions were in good faith, were done with the care of an ordinarily prudent person in similar circumstances, and were in the best interest of the LLC and in line with previous actions of the LLCs involved." As a result, the court concluded that Allen breached no fiduciary duty to Lascassas. Again, however, the court added that "the members' fiduciary duty to one another—if there was one at some time—had been effectively destroyed by their failure to act in

- 5 -

the best interest of the LLC."

The trial court also considered but rejected the request by Lascassas for a constructive trust. The trial court found no basis for imposing a constructive trust because "Allen's actions were not done with the intent to defraud, but were rather in the best interest of Lascassas," and did not breach any fiduciary duty owed to Lascassas. The trial court dismissed the claim for punitive damages, concluding that the actions of Allen and A & R did not rise to the level necessary for the imposition of punitive damages or "shock the conscience."

In summary, the trial court explained its ultimate decision and award of damages as follows:

> 16. Upon consideration of the proof, the Court finds that this is a de jure derivative action brought by Percy Dempsey on behalf of Lascassas Land Company, LLC.
>
> 17. The Court finds that the Plaintiff's request for a total amount of $652,617.51 is untenable and inequitable in this case. However, Lascassas is entitled to damages based upon the efforts of Percy Dempsey as Managing Director of Lascassas in filing this action.
>
> 18. The Court finds the following damages to be proper and equitable considering the proof:
>
> > A & R will be awarded its constructions costs of the single-family homes built upon Lots 109 and 110 in the amount of $512,795.07, payable to A & R . . . .
>
> > Lascassas has suffered no damages to the transfer of Lots 99 and 100 to A & R and the subsequent transfer back to L[a]scassas f[ol]lowing mediation.
>
> > Jimmy Allen is awarded $23,670.57, which represents the amount he paid for the promissory note held by [the] Bank.
>
> > Lascassas is awarded the balance held by the Clerk of $116,151.87.

Lascassas timely filed a notice of appeal to this Court.

*Lascassas I*, 2018 WL 1733449, at*1-*5.

In ***Lascassas I***, this Court disagreed with the trial court and held, in relevant part:

Contrary to the trial court's findings, Allen did breach the fiduciary duty he owed to Lascassas. We conclude that his actions were sufficiently wrong to support the imposition of a constructive trust over some if not all of the proceeds from the sale of the two lots deposited with the clerk.

The reach of the constructive trust is another matter. "A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." ***Holt*** [***v. Holt***], 995 S.W.2d [68,] at 71 [(Tenn. 1999)] (quotation omitted). On appeal, Lascassas argues that the trial court erred in awarding A & R $512,795.07 from the sale proceeds, which totaled $652,617.51, to reimburse A & R for its construction costs. Lascassas maintains that it should have received all proceeds from the sales of the wrongfully transferred properties. In response, A & R argues that "[e]nacting a constructive trust to the benefit of [Lascassas] over the entire proceeds of the sales without reimbursing Appellee A & R its construction costs would unjustly enrich [Lascassas] to the detriment of Appellee A & R, and it would be most inequitable." Analyzing the elements of an unjust enrichment claim, A & R argues that it conferred a benefit on Lascassas, that Lascassas appreciated the benefit, and that Lascassas accepted the benefit under such circumstances that equity does not allow it to maintain the benefit without payment to A & R. *See **Bennett v. Visa U.S.A., Inc.***, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006). In response to that argument, Lascassas insists that A & R is barred from recovering under the equitable remedy of unjust enrichment because it had unclean hands in the transaction at issue. *See **Hogue v. Kroger Co.***, 373 S.W.2d 714, 716 (Tenn. 1963) ("[A] complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction.") (quotation omitted); ***SKS Commc'ns, Inc. v. Globe Commc'ns, Inc***., No. 03A01-9405-CH-00176, 1994 WL 589576, at *5 (Tenn. Ct. App. Oct. 21, 1994) ("Because unjust enrichment is an equitable remedy, [ ] a party seeking it must come with clean hands.") (quotation omitted).

These were the same arguments raised in the proceedings before the trial court. A & R asserted a counterclaim for its construction costs on the basis of unjust enrichment, and Lascassas in its answer asserted the defense of unclean hands. Unfortunately, the trial court did not discuss or analyze the elements of an unjust enrichment claim or the defense of unclean hands in

its order. Although the trial court made extensive findings regarding the issues of fiduciary duty, constructive trust, and other matters, the final order is silent as to the issues of unjust enrichment or unclean hands. The term "unjust enrichment" is mentioned once in the procedural history, and the term "unclean hands" is never mentioned in the order. The order simply states that the trial court found the request by Lascassas for a total award of $652,617.51 "untenable and inequitable" and an award to A & R for its construction costs "proper and equitable considering the proof."

*Lascassas I*, 2018 WL 1733449, at *10. Because the trial court failed to make sufficient findings as required under Tennessee Rule of Civil Procedure 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specifically and shall state separately its conclusions of law and direct entry of the appropriate judgement."), this Court remanded the case "for the trial court to consider and make appropriate findings regarding the issues of unjust enrichment and unclean hands" in view of our holdings in *Lascassas I*. *Id.* at *11.

On appeal from *Lascassas I*, the trial court entered additional findings of fact and conclusions of law on September 24, 2018. The trial court framed the issue before it as follows:

The ultimate question before this court is whether A & R is entitled to reimbursement for the construction costs for the construction of two homes on the two lots belonging to Lascassas, or whether A & R is barred by the equitable doctrines of unclean hands and/or bared under the equitable doctrine that equity does not reward volunteers—the court will expand its findings of fact and conclusions of law to include a consideration of the plaintiff's recent, new plea in bar, wherein plaintiff asserts that equity does not award volunteers. The court will also consider an award of reasonable attorney fees to counsel for the plaintiffs, as prayed for in its three filed complaints, if requested.

As discussed in detail below, the trial court awarded the $652,617.55, which it held in constructive trust, as follows: (1) $512,795.07 to A & R for its uncontested construction costs; (2) $139,822.44 to Lascassas, which amount was comprised of the stipulated value of lots 109 and 110 (i.e., $48,000.00 per lot), and $43,822.44, which was the profit realized from the sales of the homes on the two lots. The trial court also held that Lascassas was entitled to recoup attorney's fees and allowed it additional time to file a motion for same.

On October 19, 2018, Lascassas filed its motion for attorney's fees, requesting an award of $88,925.00. Following a hearing, the trial court awarded Lascassas $22,066.00 in attorney's fees and costs, which amount was divided equally between A & R and Mr.

Allen.  Lascassas appeals.

## II. Issues

We perceive that there are two dispositive issues, which we state as follows: Lascassas raises the following issues for review:

1.  Did the trial court err in awarding A & R its costs of construction under the theory of unjust enrichment and on its finding that A & R was not barred due to unclean hands.
2.  Did the trial court err in the calculation of its attorneys' fee and expenses award to Lascassas.

## III. Standard of Review

The scope of our review in this appeal is the same as in *Lascassas I*, to-wit:

> When reviewing a trial court's findings following a bench trial, this Court reviews the record de novo and presumes that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 422 (Tenn. Ct. App. 2016) (citing *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)). However, we review a trial court's legal conclusions without a presumption of correctness. *Id.*

*Lascassas I*, 2018 WL 1733449, at *6.

## IV. Unjust Enrichment and Unclean Hands

In its September 24, 2018 order, the trial court held that "the doctrine of unclean hands and the doctrine that equity doesn't award volunteers are inapplicable to the facts and circumstances of this case."  As such, the trial court declined to award Lascassas the full $652,617.51 held in constructive trust.  Rather, the trial court concluded that A & R was entitled to recoup its construction costs under the doctrines of "unjust enrichment, quasi contract and implied contract."[2]  Specifically, the trial court held

---

[2] In *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn.1966), the Tennessee Supreme Court observed that actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same.  These terms are used interchangeably to describe those implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto. *Id*.; *accord Metropolitan Gov't of Nashville and Davidson Co. v. Cigna Healthcare of Tennessee, Inc.*, M2003-02700-COA-R3-CV, 2005 WL 3132354 at *3 (Tenn. Ct. App. Nov. 22, 2005).

that Lascassas is obligated upon the theory of . . . unjust enrichment, quasi contract and implied contract to honor defendant A & R's request for payment of the construction costs for the construction of homes located on lots 109 and 110 out of the funds on deposit with the Chancery Clerk, in the amount of $512,795.07.[3]

The trial court further held that the remaining $139,822.44, which represented the net profits from the sale of the homes and the stipulated value of lots 109 and 110, would be awarded to Lascassas. As is relevant to Lascassas' first appellate issue, the trial court held that Lascassas would be unjustly enriched if it were allowed to retain the $512,795.07 in construction costs expended by A & R, the net profits from the sales of the homes, and the value of lots 109 and 110. We agree.

There can be no doubt that our holding in **Lascassas I** imposed a constructive trust in favor of Lascassas over some of the $652,617.51 in gross proceeds that were on deposit with the trial court clerk. However, due to the trial court's lack of findings concerning the competing equitable doctrines of unjust enrichment and unclean hands, we were unable to determine whether the $512,795.07 originally awarded to A & R was error. As set out in context above, on remand, the trial court justified its original award of $512,795.07 by explaining that A & R was due its uncontested costs of construction under the doctrine of unjust enrichment. On appeal, Lascassas maintains that it is entitled to the full amount of $652,617.51 held in trust by the trial court. Concerning the trial court's application of the doctrine of unjust enrichment, Lascassas' brief argues that the doctrine is not applicable because

A & R cannot satisfy the elements of an unjust enrichment claim because at the time it was building houses on the lots, Lascassas was not aware [] of the construction, and when it learned of it, filed suit and a *lien lis pendens* to stop the construction. Thus, Lascassas did not "appreciate the benefit" as it was being conferred. Additionally, whatever A & R invested in construction costs, it was improving the lots (it held as trustee for Lascassas) as a volunteer. Equity will not aid a volunteer. Finally, A & R is barred from the equitable remedy of unjust enrichment because the Court of Appeals has already ruled that it has unclean hands with respect to this transaction.

In the first instance, this Court determined that Allen had, in fact, breached a fiduciary duty in regard to the execution of the quitclaim deeds, we did not address whether the doctrine of unclean hands prevented A & R from receiving its construction costs. We determined only that we could not review the applicability of either the doctrine of unjust enrichment or the doctrine of unclean hands because the trial court made no findings on

---

[3] The parties do not dispute the amount or reasonableness of the construction costs.

- 10 -

the subjects. As such, the trial court's finding, on remand, that "the doctrine of unclean hands does not bar [A & R] from recovering its expenses" is not a deviation from the law of the case as set out in *Lascassas I*.[4]

Turning to the question of unjust enrichment:

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154-55 (Tenn. 1966)). The theory of unjust enrichment is based on the principle that "a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Freeman Indus., LLC. V. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citing *Paschall's Inc.*, 407 S.W.2d at 154). Accordingly, to establish an unjust enrichment claim, one must prove: "1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's Inc.*, 407 S.W.2d at 155). An unjust enrichment case "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995) ). The Tennessee Supreme Court has noted that the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust. *See Freeman Indus., LLC.*, 172 S.W.3d at 525; *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596; *Paschall's Inc.*, 407 S.W.2d at 155.

*Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *3 (Tenn. Ct.

---

[4] In *Creech v. Addington*, the Tennessee Supreme Court explained:

[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.

*Creech v. Addington,* 281 S.W.3d 363, 383 (Tenn. 2009) (citing *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998)).

App. March 20, 2018).

As explained in its appellate brief, the gravamen of Lascassas' argument is that "A & R cannot satisfy the second or third element[s] of an unjust enrichment claim," i.e., appreciation by the defendant of the benefit conferred, and acceptance of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value thereof. We will discuss each of these elements in turn.

Concerning the second element, i.e., appreciation by Lascassas of the benefit, in its appellate brief, Lascassas argues:

> Here, in mid-May 2015, Managing Member Dempsey hired someone to mow four lots in the Farmington Subdivision which Lascassas owned, and the mower reported back to him that houses were being built on two of the lots. Dempsey in turn contacted an attorney who . . . upon investigation discovered that the four lots had been conveyed by quitclaim deed on April 16, 2015. Thus, Lascassas had no knowledge that A & R had begun constructing houses until construction was well under way. Upon learning of the houses being built on its property, Lascassas filed suit and a *lien lis pendens* in an effort to stop the construction, yet A & R continued to build. In short, Lascassas did not "appreciate the benefit conferred" and in fact tried to stop it.

Lascassas' argument is somewhat disingenuous in view of the fact that it entered into an agreed order with A & R, under which it released its *lien lis pendens* so as to allow the unencumbered sale of the improved properties. ***Lascassas I***, 2018 WL 1733449, at *10. We note that a *lien lis pendens* is not intended to stop construction, but "an abstract of *lien lis pendens* ('suit pending') is a notice filed in the register's office in the county of suit to warn all persons that the title to the property is at issue in the litigation." ***Id.*** at *2, n. 2. Although Lascassas filed a *lien lis pendens*, which would have potentially stymied the sales of the improved lots, at no point in the litigation did Lascassas attempt to enjoin A & R from completing the construction on lots 109 and 110. Regardless, by entering the agreed order, Lascassas acknowledged that homes were being built on the two lots. In fact, the agreed order specifically states that "Lots 109 and 110 have been improved by the construction of homes." ***Id.*** Accordingly, even if we allow that Lascassas was unaware of the construction initially, its acquiescence to the agreed order, which allowed construction to proceed, negates its current argument that it had no knowledge of A & R's actions. On that note, Lascassas interprets the prima facie element that a party claiming unjust enrichment must prove that the defendant "appreciated" such benefit to mean only that Lascassas had to have knowledge of the fact that A & R was building on the subject land. In the context of unjust enrichment, however, the term "appreciate" usually denotes a received benefit. As stated in 43 Am Jur.2d *Proof of Facts* §523, "[i]f

such performance **is accepted and used** by the other party, he is answerable to the extent he is benefited on an implied promise to pay for the value he has received." (Emphasis added). Here, by executing the agreed order with A & R and releasing its *lien lis pendens*, Lascassas accepted the benefit of the completed construction of the homes on the disputed lots. Thus, Lascassas "appreciated" A & R's construction both in terms of acknowledging it and in terms of accepting the improvements to its property.

Concerning the third element of unjust enrichment, i.e., whether it would be inequitable for Lascassas to retain the benefit of A & R's construction without payment of the value thereof, we agree with the trial court that under the undisputed facts of this case, it would be inequitable for A & R not to be reimbursed for its construction costs. It is well settled that one cannot sit silently and permit another, who obviously expects to be paid, to perform valuable services for him and then not be liable for the value of the services. *Tennessee Farmers Mutual Insurance Co. v. Pritchett*, 391 SW 2d 671 (Tenn. Ct. App. 1964). Although A & R's initial acquisition of the disputed properties was done through Allen's breach of fiduciary duty, that wrong was righted through the return of the two unimproved lots and the trial court's holding that Lascassas would be awarded $96,000, the stipulated value of lots 109 and 110, plus the profits from the sales of the homes on those lots. In short, Lascassas appreciated recovery well in excess of the stipulated value of lots 109 and 110. Nonetheless, on appeal, Lascassas maintains that "[w]hatever funds A & R invested in constructing houses on the lots, it did so as a volunteer knowing all the facts. A & R is therefore barred from claiming the equitable remedy of 'unjust enrichment.'" We disagree. Again, through its agreed order with A & R, Lascassas specifically acknowledged the construction on lots 109 and 110. Lascassas took no affirmative action to enjoin A & R from completing its construction of the homes on these lots, and it released its *lien lis pendens* to allow the sales of the improved lots to move forward unencumbered. With Lascassas' acknowledgment and agreement to proceed with construction, A & R was not a volunteer. As such, we agree with the trial court's holding that "it would be unjust for Lascassas . . . to not only profit from the actual profits of the transaction, but to realize a lottery winning gain by being awarded $512,000 in construction expenses for which it did not pay a cent." Based on this reasoning, the trial court awarded Lascassas "all profits from the transaction, $43,822.44, plus the value of the lots, $96,000.00, for a total award of $139,822.44." While A & R recouped its construction costs, it was denied any profits from the sales of the home because of its conduct.

In summary, Lascassas expended nothing on construction costs; however, it allowed A & R to complete construction and to sell the homes. In view of the fact that Lascassas received more than the value of its two lots as damages (i.e., the profits from the sales), it would be unjust for Lascassas to also retain A & R's construction costs. Accordingly, we conclude that the trial court did not err in awarding A & R its construction costs of $512,795.07. Having so held, we pretermit discussion of the trial court's alternate grounds for the $512,795.07 award and pretermit Lascassas' remaining

issues and arguments as set out in its appellate brief. *See In re Jamie B.*, No. M2016-01589-COA-R3- PT, 2017 WL 2829855, at *7 (Tenn. Ct. App. June 30, 2017) (citing *State v. Mellon*, 118 S.W.3d 340, 348 (Tenn. 2003) ("[W]hen presented with multiple issues on appeal, one of which is dispositive, we have consistently found the remaining issues to be pretermitted.").

## V. Attorney's Fees

In its June 14, 2018 order, the trial court concluded that Lascassas

alleged, and proved, sufficient facts, coupled with the Court of Appeals [holding in *Lascassas I*] that Jimmy E. Allen and A & R violated its fiduciary duty of good faith to Lascassas, and that he acted intentionally to deprive Lascassas of its property, and that A & R advertised same as being the property of A & R, were sufficient allegations and proof to constitute malice, and thus provides the necessary matrix for the award of attorney fees and costs, in equity.

Thereafter, on October 19, 2018, Lascassas submitted its motion for attorney's fees, wherein it claimed that its attorneys, Malcolm McCune and Mathew Zenner, provided 347.84 hours of services at a rate of $300 and $250 per hour respectively. As such, Lascassas asked the trial court to award it $88,925.00 in attorney's fees. On January 17, 2019, A & R filed a response to Lascassas' motion for attorney's fees. Although A & R did not dispute the trial court's finding, *supra*, that Lascassas was entitled, under principles of equity, to at least some of its attorney's fees, A & R argued that the amount of fees Lascassas requested was unreasonable and should be reduced.[5] A & R further argued that any award of attorney's fees should be divided proportionately between Mr. Allen and A & R.[6]

The trial court heard the motion for attorney's fees on March 8, 2019. By order of April 25, 2019, the trial court awarded Lascassas an additional $22,066.00 in attorney's fees and costs. On appeal, Lascassas maintains that it is entitled to the full $88,925.00 it requested. Given the equities among the parties, we disagree.

The award of attorney fees is within the trial court's discretion and will not be

---

[5] Lascassas admits that the Tennessee Limited Liability Act is not applicable to A & R because A & R and Lascassas are distinct legal entities, thus leaving equity as the only basis for an award of attorney's fees and costs in this case. On appeal, none of the parties contend that the trial court applied an incorrect legal standard in awarding attorney's fees in this case. In short, only the amount of attorney's fees awarded is in dispute.

[6] By order of June 21, 2017, Lascassas received a judgment against Mr. Allen for attorney's fees in the amount of $25,000.00. This $25,000.00 judgment is not the subject of the instant appeal. Rather, Lascassas appeals the additional amount of attorney's fees awarded following our remand in *Lascassas I*.

overturned absent an abuse of discretion. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. ***Id***. Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." ***Caldwell v. Hill***, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

In its appellate brief, Lascassas asserts that its request for $88,925.00 in attorney's fees and $5,621.45 in costs was "fully supported by [attorneys'] declarations, and billing records." Whether there is sufficient documentation of attorney's fees and costs is not dispositive of the question of whether those fees are reasonable. Here, Lascassas received more than $47,000.00 in attorney's fees and costs (including the original judgment against Mr. Allen for $25,000, *see supra* n. 5). This case is not overly complicated, especially following our remand in ***Lascassas I***. Although there were only one-and-one-half days of trial, Lascassas' attorneys billed 347.84 hours. Given the substance of this case, the filings, and the short duration of the trial, the number of hours billed seems excessive. As such, from the record, we cannot conclude that the trial court's award of $22,066.00 in additional attorney's fees on remand constitutes an abuse of discretion. Accordingly, we affirm the trial court's award.

## VII. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Lascassas Land Company, LLC, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE